UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

THOMAS R. SNELLING,

                Plaintiff,                    Case No. 1:16-cv-656

v.                                     Honorable Janet T. Neff

W.O. SMITH et al.,

                Defendants.

_____/

**OPINION**

       This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. §§ 1983 and 1985. The Court has granted Plaintiff leave to proceed *in forma pauperis*. The Court conducted an initial review of Plaintiff's complaint under the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996). Based on that review, the Court dismissed 33 of the 37 Defendants named in Plaintiff's complaint for failure to state a claim. (Opinion and Order, ECF No. 11, 12.) The Court ordered the complaint to be served against the remaining four Defendants: Defendants Leitheim, Jensen, Conner, and Strambaugh. (*Id.*) In response to the Court's Opinion and Order, Plaintiff moved to amend his complaint. (ECF No. 13.) The Court permitted the amendment. (Order, ECF No. 14.) Plaintiff filed his amended complaint on September 29, 2016. (ECF No. 21.)

       The amended complaint is now before the Court for review under the PLRA. The Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief

from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Smith, Shiebner, Christiansen, Miniard, Lewis, Thurlby, Powell, Hammond, Lemke, Dunn, Downing, Watkins, Kotowicz, Martens, Hall, Howard, Bledsoe, Salina, Thomas, Doolittle, Zukon, Duitsman, Daugherty, Mote, **Fornwalt, Drabek, Edwards, Conklin, Davis, Desroaches, Salinas, Vanamburg, Salame, Way, Simon, Wellman, Burns, Wilson, Merren, Helder, Horford, Nielsen, Fraulick, Floyd, Greene, Chellium, Scott, Corbett, Davids, D. Robinson, Morris, Russell, M. Robinson and Feliciano**.[1] The Court will serve the amended complaint against Defendants Leitheim, Jensen, Conner, and Strambaugh.

## Discussion

### I. Factual allegations

Plaintiff is currently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP). Prior to his detention at MBP, he was housed at the Ionia Correctional Facility (ICF). Prior to Plaintiff's detention at ICF, he was housed at the Bellamy Creek Correctional Facility (IBC). Plaintiff sues four Defendants from IBC: Deputy Warden J. Davids; Residential Unit Manager (unknown) Mote; and Grievance Coordinators D.

---

[1] Defendants who appear in the amended complaint, but not the initial complaint, are listed in bold. It is possible that some of the "new" Defendants were part of the initial complaint, but their names were spelled differently. For example, the initial complaint included Defendant Unit 3 Officer Salamey; the amended complaint lists Defendant Corrections Officer Salame. Plaintiff's allegations are not sufficiently detailed to determine whether these Defendants are actually the same person.

Robinson and M. Robinson. Plaintiff also sues many Defendants who are MDOC employees at ICF: Warden W. O. Smith; Deputy Wardens (unknown) Shiebner and J. Christiansen; Resident Unit Manager G. Miniard; Assistant Residential Unit Supervisors L. Thurlby, H. Powell, and J. Fornwalt; Grievance Coordinator C. Lewis; Lieutenant D. Howard; Lieutenants (unknown) Drabek and Edwards; Sergeants (unknown) Leitheim, (unknown) Conklin, (unknown) Davis, (unknown) Desroaches, (unknown) Salinas, and  (unknown) Bledsoe; Corrections Officers (unknown) Hammond, (unknown) Lemke, (unknown) Vanamburg, (unknown) Salame, P. Jensen, (unknown) Downing, (unknown) Conner, (unknown)  Strambaugh, (unknown) Watkins, (unknown) Way, (unknown) Dunn, (unknown) Simon, (unknown)  Wellman, (unknown) Burns, (unknown) Hall, (unknown) Wilson, (unknown) Merren, (unknown)  Helder, (unknown) Horford, (unknown) Nielsen, (unknown) Fraulick, (unknown) Floyd, (unknown)  Greene, (unknown) Chellium, (unknown) Scott, (unknown) Corbett, (unknown) Martens, and (unknown) Kotowicz;  Registered Nurses (unknown) Thomas and (unknown) Doolittle; Librarian P. Zukon; Food Service Director (unknown) Daugherty; Hearing Investigator (unknown) Duitsman; and Hearing Officer S. Morris.

Plaintiff also sues one Defendant from MBP: Librarian (unknown)  Feliciono. Finally, Plaintiff sues MDOC Grievance Manager R. Russell.  Each Defendant is sued in his or her official and personal capacity.

Plaintiff's amended complaint purports to raise four claims: Count I, retaliation for for Plaintiff's protected conduct of filing civil suits against the MDOC; Count II, excessive force; Count III, exhaustion of administrative remedies misled obstructed by prison staff; and Count IV, cruel and unusual punishment. (Am. Comp., ECF No. 21, PageID.99-100.) Although those are the

only numbered claims, Plaintiff also references First Amendment violations such as denial of access to the law library and religious services as well as due process violations.  (*Id.*)

The amended complaint contains only conclusory allegations of the elements of each claim without specifying the underlying factual detail or identifying what claims are raised against which Defendant.  That deficiency is addressed to a certain extent on three pages of Plaintiff's amended complaint where he lists each Defendant by last name and includes a phrase, typically three to ten words, that explains each Defendant's "Personal Involvement."  (ECF No. 21, PageID.100-102.)  By way of example, the personal involvement of the first six Defendants is described as follows:

> W.O. Smith–In charge of Defendants made threats directly to plaintiff on 8-1-16
> Shiebner–Deputy Warden brought complaints directly to for resolve violated rights
> J. Christiansen–was directly responsible for immediate const. violations repeatedly
> G. Miniard–was in acts with Christiansen directly involved in several acts v plaintiff
> C. Lewis–MAIN issue is refusal of "exhaustion of Adm remedies" as most G.C. fabricate
> L. Thurlby–several acts within seg. refusal to mail legal mail and const. violations

(Am. Compl., ECF No. 21, PageID.100.)

Whether standing alone or combined with the conclusory allegations in the Statement of Claim, Plaintiff's cryptic "Personal Involvement" phrases do not provide sufficient detail to the Defendants to give notice of the claim each Defendant must defend against.  *See* Section II, *infra*. The Court identified the same pleading deficiency in Plaintiff's initial complaint.  Rather than correcting the problem in his amended complaint, Plaintiff simply employed the same insufficient allegations against dozens of new Defendants.

When Plaintiff filed his initial complaint (ECF No. 1), he also filed a document entitled Memorandum of Support for Plaintiff's Complaint (ECF No. 2).  Plaintiff's Memorandum

provides some additional detail to permit a more meaningful assessment of Plaintiff's claims. It was the detail provided in the Memorandum that permitted some of Plaintiff's claims to survive initial review under the PLRA. Although the initial complaint has been displaced by Plaintiff's amended complaint,[2] the Court will consider Plaintiff's Memorandum as part of the amended complaint as well. However, the Court will consider Plaintiff's Memorandum only with regard to the claims raised in the amended complaint against the Defendants identified in the amended complaint.[3]

Plaintiff's amended complaint covers the period beginning in November of 2015 through his current placement at MBP in 2016. Plaintiff was detained at IBC at the beginning of the period. He contends that Warden Trierweiler and Defendants Davids and Mote increased Plaintiff's security level in retaliation for Plaintiff's lawsuits against IBC staff. That allegedly retaliatory action resulted in Plaintiff's transfer to ICF.[4]

When Plaintiff arrived at ICF he claims he was subjected to inappropriate conditions of confinement, all in retaliation for the lawsuits and grievances he had filed. Specifically, Plaintiff contends he was placed in administrative segregation without hearing or justification; he was placed in a dirty cell; his property was withheld, broken or simply stolen; he was denied store privileges, shower privileges, yard privileges, laundry, clothing, bathroom facilities, a mattress, and appropriate

---

[2]"'An amended complaint supersedes an earlier complaint for all purposes.'" *Calhoun v. Bergh*, 763 F.3d 409, 410 (6th Cir. 2014) (citing *In re Refrigerant Compressors Antitrust Litig.*, 731 F.3d 586, 589 (6th Cir. 2013)); *see also Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438, 456 n. 4 (2009).

[3]Plaintiff's amended complaint abandoned a conspiracy claim he raised in his initial complaint as well as several Defendants.

[4]Plaintiff also names Defendant M. Robinson and D. Robinson from IBC. His allegations against M. Robinson consist of the following: "participated in several due process, constitutional violations of protected conduct by plaintiff" (Pl.'s Mem., ECF No. 2, PageID.12) and "blocking exhaust of Adm. remedies fabricated responses placement on mod status" (Am. Compl., ECF No. 21, PageID.102). His allegations against D. Robinson consist of the following: "Grievance Coordinator IBC several exhaust of remedies violations." (*Id.*)

food (he was denied meals, placed on food loaf, and provided different food than that given to prisoners at Level II); he was not permitted to send legal mail or access the law library; he was subjected to threats of violence; he was branded a snitch and put in jeopardy of harm from other prisoners; he was refused protective custody; denied medication; and denied access to religious services. Plaintiff contends that all of these "adverse actions" were in retaliation for his lawsuits and grievances against the Defendants or other MDOC personnel. Read liberally, Plaintiff's amended complaint also describes the "adverse actions" as cruel and unusual punishment in violation of the Eighth Amendment.

Plaintiff also claims he was subjected to excessive force. Plaintiff notes that he was sprayed with a chemical agent without cause on April 27, 2016, by Defendant Leitheim. Plaintiff further claims that "staff" participated in the spraying and subsequent physical abuse, but he does not identify the staff members involved.

Plaintiff complains that he was also subjected to excessive force on November 10, 2015, by Defendant Jensen. Plaintiff claims that Defendant Jensen, while removing Plaintiff's handcuffs through the food slot, forcefully ripped them off causing injury. Plaintiff alleges that Defendant Downing was present, but he does not allege that Defendant Downing used excessive force.

Plaintiff claims he suffered similar injuries on November 25, 2015. On that date, while removing Plaintiff's handcuffs through the food slot, Defendant Conner pulled Plaintiff's hands directly through the slot and Defendant Strambaugh forcefully bent Plaintiff's hands and wrists upward.

Finally, Plaintiff claims that several Defendants fabricated misconduct charges against him, interfered with his use of the prison grievance system to exhaust his administrative remedies, and interfered with his access to the courts by preventing him from making copies, using the law library, or having or sending legal mail.

## II.   Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Id*. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id*. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief."  *Id*. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.      First Amendment retaliation

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.*

There is little question that Plaintiff was engaged in protected conduct. The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000). The same is true for the filing of a civil rights action. *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002).

It is certainly possible that the unpleasant conditions of confinement allegedly forced upon him by the Defendants would be sufficiently adverse to deter a person from exercising his or her First Amendment rights. On the third element, however, Plaintiff's allegations fall short.

Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive).

Plaintiff merely alleges the ultimate fact of retaliation in this action. He has not presented any facts to support his conclusion that any Defendants acted with a purpose of retaliating against him because he filed grievances or lawsuits against other MDOC employees. Accordingly, his conclusory allegations of retaliatory motive fail to state a claim.

### B.    Eighth Amendment excessive force

The Eighth Amendment prohibits the imposition of "cruel and unusual punishments" upon prisoners. U.S. CONST. amend. VIII. But not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986). On occasion, "[t]he

maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law." *Combs*, 315 F.3d at 556 (citing *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)).  Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks omitted); *Bailey v. Golladay*, 421 F.App'x 579, 582 (6th Cir. 2011).

There is an objective component and a subjective component to an excessive force claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)).  First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383.  We ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).  Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.' " *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  This component requires a "contextual" investigation, one that is "responsive to 'contemporary standards of decency.' " *Hudson*, 503 U.S. at 8, (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).  While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).  "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.  "Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.*

-10-

Plaintiff alleges that Defendants Leitheim, Jensen, Downing, Conner and Strambaugh used excessive force against him. His allegations regarding Defendant Downing fail with respect to the November 10, 2015, incident. In the amended complaint personal involvement section, with respect to Defendant Downing, Plaintiff states only "was with Jensen during asslt. helping along." (Am. Compl., ECF No. 21, PageID.101.) There are simply no facts alleged that Defendant Downing took any action to cause Plaintiff pain. Plaintiff attributes the entire physical assault to Defendant Jensen.

A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendant Downing engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against him. Plaintiff's Eighth Amendment allegations with respect to Defendants Leitheim, Jensen, Conner and Strambaugh, however, suffice to state a claim and will be served.

### C.      Eighth Amendment - conditions of confinement

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and

wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

Plaintiff provides an extensive list of unpleasant conditions he has faced during his incarceration. For the most part, Plaintiff has failed to allege the requisite deliberate indifference. He also generally fails to link particular unpleasant conditions to particular Defendants. In those instances where Plaintiff has linked a particular Defendant to a specific unpleasant condition, the

allegations still fail to establish deprivations sufficiently egregious to constitute violations of the Eighth Amendment.

Isolated instances of squirting toothpaste into a new bag of chips, causing Plaintiff to miss meals or showers, or refusing Plaintiff access to a mattress or supplies, as alleged, simply do not constitute sufficiently serious risks to Plaintiff's health or safety nor do they evidence the sort of deliberate indifference necessary to establish an Eighth Amendment violation.  The same is true with respect to Plaintiff's allegations of threats or sexual harassment.

Plaintiff alleges that several Defendants[5] made threats or sexually harassed him. Allegations of verbal harassment or threats by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment.  *Ivey*, 832 F.2d at 955.  Nor do allegations of verbal harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.  *Id.*  Even the occasional or sporadic use of racial slurs, although unprofessional and reprehensible, does not rise to a level of constitutional magnitude. *See Torres v. Oakland Cty.*, 758 F.2d 147, 152 (6th Cir. 1985).

With respect to sexual threats or harassment,  circuit courts consistently have held that sexual harassment, absent contact or touching, does not satisfy the objective requirement because such conduct does not constitute the unnecessary and wanton infliction of pain.  *See Morales v. Mackalm*, 278 F.3d 126, 132 (2d Cir. 2002) (allegations that prison guard asked prisoner to have sex with her and to masturbate in front of her and other female staffers did not rise to level of Eighth Amendment violation); *Barney v. Pulsipher*, 143 F.3d 1299, 1311 n.11 (10th Cir. 1998)

---

[5]Defendants Smith, Drabek, Conklin, Jensen, Way, Simon, Wilson, Nielsen, Martens, and Morris "made threats;" Defendant Watkins made "sexual threats;" and Defendants Way and Scott committed "sexual harassment." (Am. Compl., ECF No. 21, PageID.100-102.)

(allegations that county jailer subjected female prisoners to severe verbal sexual harassment and intimidation was not sufficient to state a claim under the Eighth Amendment); *Howard v. Everett*, No. 99-1277EA, 2000 WL 268493, at *1 (8th Cir. Mar. 10, 2000) (sexual comments and gestures by prison guards did not constitute unnecessary and wanton infliction of pain); *cf. Seltzer-Bey v. Delo*, 66 F.3d 961, 962-63 (8th Cir. 1995) (allegations that prison guard conducted daily strip searches, made sexual comments about prisoner's penis and buttocks, and rubbed prisoner's buttocks with nightstick were sufficient to withstand motion for summary judgment); *Zander v. McGinnis*, No. 97-1484, 1998 WL 384625, at *2 (6th Cir. June 19, 1998) (verbal abuse of mouthing "pet names" at prisoner for ten months failed to state an Eighth Amendment claim); *Murray v. United States Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) (magistrate judge correctly held that verbal abuse in the form of offensive remarks regarding a transsexual prisoner's bodily appearance, transsexualism, and presumed sexual preference cannot state an Eighth Amendment claim). Some courts have held that even minor, isolated incidents of sexual touching coupled with offensive sexual remarks do not rise to the level of an Eighth Amendment violation. *See, e.g., Solomon v. Mich. Dep't of Corr.*, 478 F. App'x 318, 320-21 (6th Cir. 2012) (two "brief" incidents of physical contact during pat-down searches, including touching and squeezing the prisoner's penis, coupled with sexual remarks, do not rise to the level of a constitutional violation); *Jackson v. Madery,* 158 F. App'x 656, 661 (6th Cir. 2005) (correction officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (male prisoner's claim that a male officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive

-14-

sexual remark did not meet the objective component of the Eighth Amendment);  *Berryhill v.*

*Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (where inmate failed to assert that he feared sexual

abuse, two brief touches to his buttocks could not be construed as sexual assault); *accord Boxer X*

*v. Harris,* 437 F.3d 1107, 1111 (11th Cir. 2006); *Boddie v. Schneider*, 105 F.3d 857, 859-61 (2d Cir.

1997) (court dismissed as inadequate prisoner's claim that female corrections officer made a pass

at him, squeezed his hand, touched his penis, called him a "sexy black devil," pressed her breasts

against his chest, and pressed against his private parts).

Plaintiff does not allege that any of the allegedly threatening or harassing Defendants

ever touched him or had any form of physical contact with him in connection with sexual threats or

harassment.  Acts of verbal sexual harassment, standing alone, are insufficient to state a claim under

the Eighth Amendment.  *See Morales*, 278 F.3d at 132; *Zander*, 1998 WL 384625, at \*2.  Therefore,

Plaintiff's allegation fails to state an Eighth Amendment claim.

### D.    Due process

Plaintiff alleges that he was deprived of property and his liberty without due process

of law.  With respect to Plaintiff's claims that he was deprived of property, the claims are barred by

the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474

U.S. 327 (1986).  Under *Parratt*, a person deprived of property by a "random and unauthorized act"

of a state employee has no federal due process claim unless the state fails to afford an adequate post-

deprivation remedy.  If an adequate post-deprivation remedy exists, the deprivation, although real,

is not "without due process of law."  *Parratt*, 451 U.S. at 537.  This rule applies to both negligent

and intentional deprivation of property, as long as the deprivation was not done pursuant to an

established state procedure.  *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984).  Because

Plaintiff's claim is premised upon allegedly unauthorized acts of state officials, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993).  Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case.  Plaintiff has not alleged that state post-deprivation remedies are inadequate.  Moreover, numerous state post-deprivation remedies are available to him.  First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation.  MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013).  Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board.  MICH. COMP. LAWS § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013).  Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies."  MICH. COMP. LAWS § 600.6419(1)(a).  The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480.  Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property.  Accordingly, Plaintiff's claims for deprivation of property without due process of law will be dismissed.

Read liberally, Plaintiff's amended complaint also claims that he has been deprived of liberty without due process of law by fabricated misconduct tickets.  A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty

-16-

interest.  In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior.  The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather, the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits. *Wolff*, 418 U.S. at 557.

     Plaintiff does not allege that his major misconduct convictions resulted in any loss of good-time credits, nor could he.  The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[6] for prisoners convicted of crimes occurring after April 1, 1987.  In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence.  Rather, it merely affects parole eligibility, which remains discretionary with the parole board.  *Id.* at 440.  Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement.  355 F. App'x at 912; *accord, Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011);  *Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at * 4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 5491196 (Jan. 4, 2011).  In the absence of a demonstrated liberty interest, Plaintiff has no due

---

[6] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system.  MICH. COMP. LAWS § 800.33(5).

-17-

process claim based on the loss of disciplinary credits. *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

Even in the absence of a protectible liberty interest in disciplinary credits, a prisoner may be able to raise a due process challenge to prison misconduct convictions that result in a significant, atypical deprivation. *See Sandin v. Connor*, 515 U.S. 472 (1995). Plaintiff has not identified any significant deprivation arising from his convictions. Unless a prison misconduct conviction results in an extension of the duration of a prisoner's sentence or some other atypical hardship, a due process claim fails. *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004). Plaintiff has not alleged a consequence of his "false" misconducts that extended his sentence or caused an atypical hardship; accordingly, he has failed to state a claim for a due process violation.

### E.    Interference with the prison grievance procedure

Plaintiff complains that several Defendants have interfered with the grievance process by virtue of their fabricated responses or by placing him on modified status. Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson*, No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar.

28, 1994).   Because Plaintiff has no liberty interest in the grievance process, Defendants'
unsatisfactory responses to Plaintiff's grievances did not deprive him of due process.

Plaintiff frequently describes the Defendants' conduct as interference with his
exhaustion of administrative remedies.  Defendants' actions have not barred Plaintiff from seeking
a remedy for his grievances.  *See Cruz v. Beto*, 405 U.S. 319, 321 (1972).  "A prisoner's
constitutional right to assert grievances typically is not violated when prison officials prohibit only
'one of several ways in which inmates may voice their complaints to, and seek relief, from prison
officials' while leaving a formal grievance procedure intact."  *Griffin v. Berghuis*, 563 F. App'x 411,
415-416 (6th Cir. 2014) (citing *North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6
(1977)).  Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the
judicial process.  *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982).  Even if Plaintiff had
been improperly prevented from filing a grievance, his right of access to the courts to petition for
redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file
institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-
to-the-courts claim.  *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury);
*Bounds v. Smith*, 430 U.S. 817, 821-24 (1977).  The exhaustion requirement only mandates
exhaustion of *available* administrative remedies.  *See* 42 U.S.C. § 1997e(a).  If Plaintiff were
improperly denied access to the grievance process, the process would be rendered unavailable, and
exhaustion would not be a prerequisite for initiation of a civil rights action.  *See Ross v. Blake*, 136
S. Ct. 1850,  1858-59 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by
policy or by the interference of officials, the grievance process is not available, and exhaustion is
not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470 (6th Cir. 2001).  In light of the foregoing,

-19-

the Court finds that Plaintiff fails to state a cognizable claim when he claims Defendants prevented him from exhausting his administrative remedies.

Plaintiff also complains that he has been placed on modified grievance access for filing grievances. Placement on modified access does not prohibit an inmate from utilizing the grievance process. *See Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445-47 (6th Cir. 2005); *Corsetti v. McGinnis*, 24 F. App'x 238, 241 (6th Cir. 2001). The inmate may still submit grievances to the grievance coordinator, who reviews the grievance to determine whether it complies with institutional rules regarding the filing of grievances. There is nothing constitutionally improper about this review process for a prisoner who has demonstrated an inability to properly utilize the grievance process in the past. Moreover, even if a grievance coordinator denied Plaintiff a grievance form, Plaintiff could file a grievance directly to the Director's Office at Step III claiming staff corruption. Policy Directive 03.02.130, ¶ II.

## F.  Access to the courts

Petitioner contends that several Defendants have interfered with his access to the courts by refusing to make copies, refusing access to the law library, and interfering with legal mail. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-

25.  The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts.  *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit.  In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury."  *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000.   In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a non-frivolous legal claim.  *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.  The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355.

"Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only."   *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc).  Moreover, the underlying action must have asserted a non-frivolous claim.  *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

-21-

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353, 353 n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416. Plaintiff has failed to allege any actual injury here; accordingly, he has failed to state a claim for violation of his right to access the courts.

## Conclusion

Having conducted the review of Plaintiff's amended complaint required by the Prison Litigation Reform Act, the Court determines that Defendants Smith, Shiebner, Christiansen, Miniard, Lewis, Thurlby, Powell, Hammond, Lemke, Dunn, Downing, Conner, Watkins, Kotowicz, Martens, Hall, Howard, Bledsoe, Salina, Thomas, Doolittle, Zukon, Duitsman, Daugherty, Mote, Fornwalt, Drabek, Edwards, Conklin, Davis, Desroaches, Salinas, Vanamburg, Salame, Way, Simon, Wellman, Burns, Wilson, Merren, Helder, Horford, Nielsen, Fraulick, Floyd, Greene, Chellium, Scott, Corbett, Davids, D. Robinson, Morris, Russell, M. Robinson and Feliciono will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants Leitheim, Jensen, Conner, and Strambaugh.

An Order consistent with this Opinion will be entered.


Dated: __November 3, 2016_____     __/s/ Janet T. Neff_____
                                        Janet T. Neff
                                        United States District Judge


-22-